UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CALVINO STANFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:04-1461(RBW) |
| POTOMAC ELECTRIC POWER COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Currently before the Court are the defendant's Motion to Dismiss [D.E. #7], the plaintiff's Motion for Leave to Amend Complaint [D.E. #10], the defendant's Motion to Strike Plaintiff's Surreply [D.E. #14], and the plaintiff's Motion for Leave to Amend Complaint and File Surreply [D.E. #16]. For the reasons stated below, the Court will grant the plaintiff's motion for leave to amend complaint and file his surreply, deny the defendant's motion to strike the plaintiff's surreply and grant the defendant's motion to dismiss.

**I. Background**

The plaintiff, Calvino Stanford ("Stanford"), brought this action in this Court against the Potomac Electric Power Company ("PEPCO") pursuant to 29 C.F.R. § 1910.269 (2000), an Occupational Safety and Health Act ("OSHA") regulation, and 24 U.S.C. 134(b) (1996).[1] Complaint ("Compl.") and Amended Verified Complaint ("Am. Compl.") ¶ 1.[2] The plaintiff's

---

[1] The plaintiff alleges that this Court has jurisdiction in this matter pursuant to 24 U.S.C. 134(b). Am. Compl. at 1. This provision of the code, however, provides for the tenure and residence of district judges and has no bearing on the Court's jurisdiction to entertain this matter.

[2] The plaintiff asserts that venue rest in this particular District Court pursuant to 28 U.S.C. § 1391(a) and (b). Compl. ¶ 2; Am Compl. ¶ 2.

two count complaint asserts claims of intentional infliction of emotional distress and the creation of a hostile work environment Id. ¶¶ 13-14.  According to Stanford, these claims arose on January 13, 2004, when a crew leader at PEPCO, Bryan Harrod ("Harrod"), "ordered [] Stanford into a manhole to take measurements and determine what feeders were going through the manhole" despite the fact that Stanford had never received proper manhole safety entry training. Id. ¶¶ 6-7.  The plaintiff further alleges that he was not provided with rubber insulated gloves as protective gear prior to entering the manhole, and consequently had to enter the manhole and take the measurements with his bare-hands while surrounded by three 13,000 volt feeders.  Id. ¶¶ 8-10.  Moreover, Stanford alleges that Harrod "knew [he] had not had training and did not have the proper protective gear" when he ordered him into the manhole.  Id. ¶ 11.  In complying with Harrod's order, Stanford further complains that "he was filled with fear and apprehension during the time he was in the manhole and later after he came out of the manhole."  Id. ¶ 12.  Stanford therefore requests that this Court award him appropriate damages of not less than $1,000,000 for intentional infliction of emotional distress and for having been subjected to a hostile work environment.  Id. at 2.

PEPCO has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based upon the plaintiff's purported failure to state a claim upon which relief can be granted.  Motion to Dismiss ("Def.'s Mot.") at 1.  PEPCO maintains that Stanford's complaint fails to state a claim for three reasons.  First, they contend that Mr. Stanford's intentional infliction of emotional distress claim is deficient because the conduct alleged is not "outrageous . . . [,] intentional or reckless," nor is the alleged resulting emotional distress "severe" for purposes of creating a prima facie case of intentional infliction of emotional distress.  Id.  Second, PEPCO

argues that the hostile work environment claim cannot be maintained because OSHA does not confer a private cause of action. Id.  Third, PEPCO argues that both claims must be dismissed because they are barred by the doctrine of res judicata since Stanford had previously litigated "these same factual allegations in a prior [class action] lawsuit against PEPCO" in Butler v. Potomac Elec. Power Co., No. 03-0946 (D.D.C. October 15, 2003).  Id.[3]

     Subsequent to the filing of PEPCO's dismissal motion, on November 1, 2004, the plaintiff filed a motion for leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15 and Local Rule 15.1.  Motion to for Leave to Amend Complaint ("Mot. to Amend Compl.") at 1.  Stanford seeks to further amend his complaint to add two additional claims – one for retaliation pursuant to 42 U.S.C. 2000e-3(a) ("Title VII") and a claim for punitive damages.  Id.  Specifically, Stanford contends that PEPCO ordered him to go into the manhole without protective gear or proper training in retaliation for an earlier lawsuit against PEPCO in which he was a party and alleged that he had been the victim of racial discrimination. Mot. to Amend Compl. at 4.  PEPCO opposed the motion for leave to further amend the complaint, arguing that the proposed amendments could not survive a motion to dismiss and thus should be denied as futile.  Defendant's (1) Reply in Support of Motion to Dismiss and (2) Opposition to Motion for Leave to Amend Complaint ("Def.'s Reply & Opp'n") at 4. Additionally, the defendant claims that Stanford has not yet exhausted his required administrative

---

[3]Because Stanford was a party in the class action lawsuit, which is assigned to another member of this Court (Judge John Bates), PEPCO has also requested that this case be transferred to Judge Bates pursuant to Local Civil Rule 45. The Court believes that PEPCO actually intended to request that this case be transferred to Judge Bates pursuant to Local Rule 40.5(a)(4), which provides, "cases whether criminal or civil, including miscellaneous, shall be deemed related where a case is dismissed, with prejudice or without, and a second case is filed involving the same parties and relating to the same subject matter." LcRV 40.5(a)(4).  The Court has considered PEPCO's transfer request and decided, after consultation with Judge Bates, that the two cases are sufficiently distinct, especially because this case is an individual rather than a class action matter.  Accordingly, this Court will retain this case.

remedies,[4] and even if he has, his allegations do not constitute an "adverse employment action", which is required to plead a prima facie case of retaliation.  Id. at 4-5 (citations omitted).  PEPCO also opposes the plaintiff's attempt to assert a claim for punitive damages, arguing that a request for a  punitive damage award is not an independent cause of action, but rather is an additional remedy that may be recovered if the plaintiff prevails on the question of liability.  Id. at 5-6 (citations omitted).

On November 19, 2004, without acquiring permission from the Court, Stanford filed a surreply to the defendant's motion to dismiss, wherein he asserted that the Court could also exercise jurisdiction over his retaliation claim under 42 U.S.C. 1981.  Plaintiff's Surreply to Defendant's Motion to Dismiss ("Pl.'s Surreply") at 1-2.  The defendant then moved to strike the plaintiff's surreply, alleging that a surreply is not permitted without leave of court and that the surreply was "an improper attempt to amend the pleadings without following the requirements of Federal Rule of Civil Procedure 15."  Motion to Strike Plaintiff's Surreply ("Mot. to Strike") at 1.  In response, on December 16, 2004, Stanford filed a joint motion for leave to amend his complaint and a motion to file the surreply.  Motion for Leave to Amend Complaint and File Surreply ("Second Mot. to Amend Compl.") at 1.  Stanford argues that the Court should grant him leave to file his surreply because it is necessary to assert 42 U.S.C. § 1981 as a jurisdictional basis for the prosecution of his retaliation claim.  Id. at 2.[5]  Furthermore, the plaintiff requests that the Court permit him to amend his complaint for a third time in order to add 28 U.S.C.

---

[4]According to PEPCO, the "[p]laintiff has not yet filed a Charge of Discrimination with the Equal Employment Opportunity Commission, [which is] a prerequisite for bringing a Title VII claim."  Def.'s Reply & Opp'n at 4 n.2.

[5]Notably, the plaintiff has not sought to amend his complaint to assert additional jurisdictional grounds for his OSHA hostile work environment claim.

1332(a) – diversity of citizenship jurisdiction – as the jurisdictional basis to prosecute his intentional infliction of emotional distress claim in this Court.[6]  Id.  The defendant also opposed this motion on the ground that the section 1981 retaliation claim, like the Title VII retaliation claim, must be dismissed because there is no cognizable adverse employment action alleged in the pleadings, thus making this further request to the amend the complaint futile.  Defendant's Opposition to Motion for Leave to Amend Complaint and File Surreply ("Def.'s Opp'n") at 2-3.

## II. Standards of Review

### 1. Leave to Amend the Complaint

Before a defendant responds to a complaint, the plaintiff may amend the complaint once as a matter of right.  Fed. R. Civ. P. 15(a).  However after a responsive pleading has been filed, the complaint may be amended "only by leave of court or by written consent of the adverse party."  Id.  While the court has sole discretion to grant or deny leave to amend, absent a sufficient reason to deny an amendment request, leave should be "freely given."  Forman v. Davis, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).  The rationale for this liberal perspective is that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  Id. at 182.  Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility."  Id.  The primary consideration in deciding whether to permit an amendment focuses on whether the non-moving

---

[6] Stanford asserts diversity jurisdiction under 28 U.S.C. 1332(a) because he is domiciled in Maryland and a citizen of Maryland, while the defendant is domiciled and a citizen of the District of Columbia, and because he seeks a sum in excess of $75,000.  Second Mot. for Leave to Amend Compl. at 4.

party will be prejudiced due to unfair disadvantage or deprivation of the opportunity to discover and present facts. In re Vitamins Antitrust Litigation, 217 F.R.D. 34, 36-37 (D.D.C. 2003) (finding that despite significant inexcusable delay in filing, absent prejudice to non-moving party, leave to file should be granted).

  **2.** **Res Judicata**

Res judicata "bars a claim where there has been a final judgment on the merits in a prior suit involving the same parties or their privies and the same cause of action." Polsby v. Thompson, 201 F. Supp. 2d 45, 48 (D.D.C. 2002). "The four factors that must exist for res judicata to apply are (1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." Id. (citations omitted); Paley v. Estate of Ogus, 20 F. Supp. 2d 83, 87 (D.D.C. 1998). This doctrine "serves the dual purpose of protecting litigants from the burden of relitigating an identical issue against the same party or his privy and of promoting judicial economy by preventing needless duplicative litigation." Drake v. Cappelle, No. Civ.A. 02-1049, 2005 WL 670755, at *8 (D.D.C. 2005) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979)).

  **3.** **Motion to Dismiss under Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (citing Fed. R. Civ. P. 8(a)). And, when reviewing a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S.

163, 164 (1993).  A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which he is entitled to relief.  Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).  Thus, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

### III.  Analysis

**1.    The Plaintiff's Motion for Leave to File a Surreply**

After the defendant moved to strike the plaintiff's surreply based on the plaintiff's failure to request leave to file a surreply and his "improper attempt to amend the pleadings without following the requirements of Federal Rule of Civil Procedure 15," Mot. to Strike. at 1, the plaintiff filed his motion to file a surreply to the defendant's motion to dismiss.  Through his proffered surreply, the plaintiff requests that the Court also exercise jurisdiction pursuant to 42 U.S.C. § 1981 over the retaliation claim he desires to pursue in the amended complaint he seeks to file.  Pl.'s Surreply at 1.  The defendant correctly argues that before filing a surreply, a party must request the Court's permission to do so.  Def.s' Mem. Mot. to Strike at 2;[7]  see Longwood Vill. Rest., Ltd. v. Aschcroft, 157 F. Supp. 2d 61, 68 n.3 (D.D.C. 2001).  Additionally, "the moving party must show that the reply filed by the moving party raised new arguments that were

---

[7]The defendant additionally argues that the plaintiff's surreply should be denied as futile because the claim which is the subject of the surreply is barred by the doctrine of res judicata.  Memorandum of Points and Authorities in Support of Motion to Strike Plaintiff's Surreply ("Def.'s Mem Mot. to Strike Surreply") at 3.  Specifically, the defendant purports that "the retaliation claim arises from the same factual allegations that were part of the prior related action between [p]laintiff and P[EPCO] that was dismissed with prejudice."  Id.  The Court will not address this argument here, but instead will resolve all res judicata issues later in this opinion.

not included in the original motion." Longwood, 157 F. Supp. 2d at 68 n.3; see also Alexander v. FBI, 186 F.R.D. 71, 74 (D.D.C. 1998) (granting motion for leave to file a surreply where the reply included a declaration which was not included in the original motion). The Alexander Court reasoned that if it denied the plaintiffs leave to file their surreply, they would be unable to contest matters "presented to the court for the first time." 186 F.R.D. at 74. The Court therefore found that this rationale sufficiently demonstrated "good cause" warranting the granting of the plaintiffs' motion. Id. Similarly, the plaintiff here seeks for the first time to file a retaliation claim pursuant to 42 U.S.C. § 1981.[8] Id. In accordance with the reasoning of Alexander and the need to advance efficiency in the processing of cases, the Court denies the defendant's motion to strike the surreply, which will aid the Court in resolving all pending motions simultaneously.

### 2.    The Plaintiff's Motions to Amend the Complaint

Since filing his initial amended complaint, the plaintiff has filed two motions for leave to amend the complaint. On November 1, 2004, Stanford requested leave to file a second amended complaint to include two additional claims – one for retaliation under 42 U.S.C. 2000e-3(a) and a second for punitive damages. Mot. for Leave to Amend Compl. at 1. Later, on December 16, 2004, the plaintiff filed another motion for leave to amend the complaint for the purpose of asserting an additional basis for this Court's having jurisdiction over his retaliation claim. Second Mot. to Amend Compl. at 2. Specifically, the plaintiff seeks to plead 42 U.S.C. § 1981 as another jurisdictional basis for his retaliation claim being brought in this Court. Id. Additionally, the plaintiff desires to assert diversity jurisdiction pursuant to 28 U.S.C. 1332(a), as

---

[8]The Court notes that the plaintiff previously sought to assert the retaliation claim pursuant to Title VII, however, this is the plaintiff's first attempt to pursue a retaliation claim pursuant to section 1981.

grounds for this Court's authority to entertain his intentional infliction of emotional distress claim.  Id.

"The decision whether to allow a plaintiff to amend his complaint . . . should be freely given unless there is good reason, such as futility, to the contrary."  Willoughby v. Potomoc Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996) (citation omitted).  Here, the Court finds good reason to grant the November 1, 2004 motion for leave to amend the complaint because the plaintiff's amendment advances diversity jurisdiction as the basis for this Court to address one of the plaintiff's claims on the merits.  In addition, the plaintiff's December 16, 2004 motion to amend the complaint is also granted because the Court finds that the defendant will not be prejudiced by permitting this amendment, and the plaintiff "ought to be afforded an opportunity to test his claim on the merits."[9]  Forman v. Davis, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).  Thus the causes of action now before this Court are (1) the claim of intentional infliction of emotional distress, (2) a hostile work environment claim which the plaintiff asserts is derived from the violation of an OSHA regulation, and (3) a retaliation claim.

### 3.    Defendant's Motion to Dismiss

#### A.    Res Judicata

In the defendant's motion to dismiss, and in each of its oppositions to the plaintiff's

---

[9]The Court recognizes that the defendant opposes the plaintiff's motion to amend the complaint for the purpose of adding the retaliation claim and the demand for punitive damages, arguing that both additions would not survive a motion to dismiss. Def.'s Reply & Opp'n at 4.  Specifically, the defendant opines that permitting the plaintiff to add his Title VII retaliation claim would be a futile jester because "his allegations do not constitute an adverse employment action, which is a required element to establish a prima facie claim of retaliation under Title VII." Id. at 4-5.  Additionally, the defendant purports that the plaintiff's punitive damages claim would fail because punitive damages are "not a claim itself but a type of remedy predicated on other (successful) claims." Id. at 5-6. Rather than entertain these arguments now, the Court will address whether all of the initial or amended claims would survive a motion to dismiss together in the next part of this opinion.

motion to amend the complaint, PEPCO argues that all of the plaintiff's claims are barred by res judicata.  Mot. to Dismiss at 1-2; Def.'s Reply & Opp'n at 3-4; Memorandum of Points & Authorities In Support of Motion to Strike Plaintiff's Surreply ("Def.'s Mem. Mot. Strike Surreply") at 3; Def.'s Opp'n at 2.  In support of its argument, PEPCO states that Stanford was one of eight plaintiffs in a lawsuit filed against PEPCO and others in 2003.  Memorandum of Points and Authorities in Support of Motion to Dismiss ("Def.'s Mem.") at 2; see also Butler v. Potomac Elec. Power Co., No. 03-0946 (D.D.C. October 15, 2003).  PEPCO contends that in the Butler lawsuit, the plaintiff raised and litigated the same allegations regarding its crew leader, Bryan Harrod.  Def.'s Mem. at 2.  Specifically, they argue that "the [p]laintiff's lawsuit is based solely on the allegations that Harrod directed him to perform a work assignment in a manhole without sufficient training or protective gloves, thus causing him emotional distress and creating a hostile work environment."  Id. at 6-7 (citing Amd. Compl. ¶¶ 6-14) (footnote omitted).  The defendant therefore concludes that because the plaintiff raised these allegations in his unsuccessful opposition to PEPCO's motion for summary judgment in the Butler case, he "should not now have a second bite at the apple and an opportunity to litigate these claims again."  Id. at 7.

In opposition to the defendant's res judicata position, the plaintiff contends that the conduct complained of in Butler occurred on or before October 15, 2003, whereas the event which give rise to his intentional infliction of emotional distress claim here occurred on January 13, 2004.  Plaintiff's Opposition to Motion to Dismiss ("Pl.'s Opp'n") at 1.  Therefore, the plaintiff posits that the events complained of in the present case do not trigger application of the doctrine of res judicata.  Id.

As indicated, "[t]he four factors that must exist for res judicata to apply are (1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." Polsby, 201 F. Supp. 2d at 48. Based on the plaintiff's opposition to the motion to dismiss, it appears that he does not dispute the first two requirements for res judicata – that the parties in both lawsuits were the same, and that a judgment was rendered by a court of competent jurisdiction. See generally Pl.'s Opp'n. Therefore, only the latter two elements are at issue – whether a final judgment on the merits was rendered and whether the same cause of action was the subject of both suits. Id. And because it appears that the defendant has not established these final two elements, the plaintiff's claims are not barred by res judicata.

In their amended complaint, the plaintiffs in the Butler case asserted violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., the Civil Rights Act of 1866, 42 U.S.C. § 1981, the District of Columbia Human Rights Act, D.C. Code 1981, § 1-2512; and the Labor Management Relations Act, 29 U.S.C. § 185. Butler Class Action Complaint at 3. The specific allegations in that complaint concerning Stanford are that

> Plaintiff and proposed class representative, Calvino Stanford is a black employee of PEPCO and a resident of Washington, DC. He is employed as a field technician pay grade 6. When he originally applied for employment at PEPCO he was given false and misleading information concerning the job he should apply for based on his qualifications. Shortly after being hired he learned that there was a higher paying job for which he was qualified and asked to be transferred to that higher paying job, but he was denied. The company continued to advertise the job and three months later hired a white female who was less qualified than Calvino. Plaintiff Stanford has been subjected to unlawful discrimination on the basis of his race in the terms, conditions and privileges of his employment.

Id. at 5. Thus, the allegations in the Butler complaint concerning Stanford did not include the

11

allegations in the plaintiff's current complaint pertaining to the actions of PEPCO employee Harrod.  However, references to Harrod's alleged conduct was interjected in the Butler case in the plaintiff's Opposition to PEPCO's Motion for Summary Judgment ("Butler's Opp'n"), where, in addition to a series of contentions against PEPCO, the plaintiff related the allegations pertaining to Harrod as follows:

> During 2003 Mr. Harrod, a lead man, was told while in Mr. Brown's office that Mr. Stanford had never received manhole training or manhole rescue training. Because of this he was not to enter the manhole.  This despite the fact that Mr. Stanford did not have low voltage 4000 kilovolt gloves, 20 kilovolt gloves nor any safety equipment other than goggles.  By ordering Mr. Stanford to go into the manhole this created a hostile work environment and placed Mr. Stanford's safety in danger.  This has caused a stressful work environment.

Butler's Opp'n at 12.  However, references to incidents that occurred subsequent to the filing of a complaint are not sufficient to put those claims before the court.  See Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998).

In Pleming, the plaintiff suffered a back injury which precluded her from continuing to work as a laborer for Universal-Rundle Corp. ("Universal").  Id. at 1355.  She then applied for a clerical position with Universal, which would have been less physically demanding, but would pay less than she earned as a laborer.  Id.  Pleming was denied the position in July of 1993 and in August of 1994, she filed an employment discrimination lawsuit in federal district court alleging that Universal had discriminated against her based on her race and disability.  Id. at 1355. Pleming set forth a prima facie case of discrimination, but Universal advanced a legitimate non-discriminatory reason for not hiring her – a company policy against allowing employees to transfer to lower paying jobs.  Id.  Later, two additional clerical positions of the type Pleming was

seeking became available at Universal. Id. However, because Pleming did not learn about these positions while they were available, she did not apply for them. Id. Pleming never attempted to make these two additional positions as part of her complaint, but she did seek to use them as proof that the policy asserted by Universal was a pretext for discrimination that had been made in an effort to avoid summary judgment against her on her claims arising out of the July 1993 hiring decision. Id. at 1356. Nonetheless, the district court entered summary judgment in favor of Universal. Id. at 1356. Thereafter Pleming filed another complaint alleging discrimination and retaliation against her based on the company's decision to hire the two other individuals for the October 1994 clerical vacancies. Id. Universal moved to dismiss the complaint on the grounds that "either res judicata or collateral estoppel barred the suit because Pleming had already litigated and lost on her claims arising out of the October 1994 hiring decisions." Id. The district court agreed and dismissed Pleming's complaint. Id. However, the Eleventh Circuit reversed the district court's decision to bar Pleming's claims of discrimination based on res judicata. Id. at 1359. The court reasoned that "Pleming's references to the incidents in her briefs were insufficient to put her claims of discrimination and retaliation arising out of the October 1994 incidents before the district court pursuant to the Federal Rules of Civil Procedure . . . [and] were insufficient to actually assert these claims in the prior litigation." Id. Equally as persuasive to the Eleventh Circuit was the district court's failure to mention the October 1994 incidents in granting Universal's summary judgment motion even though a magistrate judge had made reference to the 1994 vacancies in the "Background Facts" section of his report to the district court on the merits of the summary judgment motion. Id. The court explained that "[a]t best, the report's reference to the post-1993 openings indicate[d] that the magistrate judge may have

considered the events as evidence of pretext but [did] nothing to suggest that the magistrate judge actually rendered a decision about whether those events constituted independent or even continuing acts of employment discrimination." Id.

The present case is strikingly similar to the facts in Pleming. Here, as in Pleming, an additional incident allegedly arose after the Butler plaintiffs filed their initial complaint that purportedly supported the plaintiff's claim of discrimination in the Butler case. And, like in Pleming, the plaintiff here never moved to amend the complaint in the Butler case to include any of the additional allegations that now form the basis of his claims in this case. Instead, the plaintiff only included those allegations in the Butler plaintiffs' brief in opposition to PEPCO's motion for summary judgment in the Butler litigation. And Judge Bates made no mention of the manhole incident in his Butler opinion which granted summary judgment to PEPCO. See Memorandum Opinion dated August 25, 2004. Thus, the manhole incident cannot be considered to have been asserted as a claim in the Butler class action complaint. Therefore, none of the plaintiff's claims asserted in the complaint now before the Court are barred by the doctrine of res judicata. Accordingly, the Court will now address the sufficiency of the plaintiff's intentional infliction of emotional distress and retaliation claims in accordance with the standard of review applicable to dismissal motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[10]

---

[10] The plaintiff also alleges in his complaint a hostile work environment claim under the OSHA regulation. See Compl. at 2. However, the defendant correctly asserts in its motion to dismiss that this claim fails to state a claim upon which relief may be granted because there is no private cause of action under OSHA. Def.'s Mot. to Dismiss at 5-6 (citing Fed. Employees for Non-Smokers' Rights v. United States, 446 F. Supp. 181, 183 (D.D.C. 1978), aff'd 598 F.2d (D.C. Cir. 1979) (other citations omitted). The plaintiff failed to respond to this argument and therefore the Court considers the defendant's position on this claim conceded.

### B.    Intentional Infliction of Emotional Distress

PEPCO asserts in its motion to dismiss that Stanford's complaint fails to state a claim for intentional infliction of emotional distress. Def.'s Mem. at 3. Stanford's complaint alleges that "when the crew leader, Bryan Harrod ordered Mr. Stanford into the manhole without training or proper protective gear, his actions were calculated to cause serious mental distress." Compl. ¶ 13. "In order to succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." Duncan v. Children's Nat'l Med. Ctr., 702 A.2d 207, 211 (D.C. 1997) (quoting Drejza v. Vaccaro, 650 A.2d 1308, 1312 (D.C. 1994)). PEPCO maintains that the plaintiff's complaint fails to satisfy all three elements. See Def.'s Mem. at 3-5.

To establish his intentional infliction of emotional distress claim, the plaintiff must show that the defendant's conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" Camm v. Kennickell, Civ. A. No. 85-3844, 1990 WL 198621, at *4 (D.D.C. 1990) (quoting Howard Univ. v. Best, 484 A.2d 958, 986 (D.C. 1984)). In other words, "the conduct must be 'atrocious and utterly intolerable in a civilized community.'" Id. (quoting Waldon v. Covington, 415 A.2d 1070, 1076 (D.C. 1980)). Furthermore, "[i]n determining whether the conduct in question is extreme and outrageous as a matter of law, this [C]ourt [is instructed to] consider[] applicable community standards, the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place." Duncan, 702 A.2d at 211. The defendant argues that Stanford's allegations fall short of this standard "because it is well-settled in the District of

15

Columbia that an employer's failure to provide proper safety training and equipment is not sufficiently extreme and outrageous." Def.'s Mem. at 3.

In support of this assertion, the defendant cites Duncan, where the District Court of Columbia Court of Appeals affirmed the dismissal of a pregnant employee's intentional infliction of emotional distress claim arising out of her transfer to a position involving exposure to radiation without informing her of the potential dangers of the radiation exposure and without providing her with the proper equipment to monitor her exposure. Duncan, 702 A.2d at 211-212. Thus, Duncan teaches that even assuming Stanford suffered emotional distress, it was not a result of any "intentional" conduct on the part of PEPCO. Id. at 211. Like the pregnant woman in Duncan, Stanford "had a choice not to [enter the manhole.]" Id. If Stanford felt that he did not have the proper training or protective gear to enter the manhole, he could have chosen not to enter the manhole. "Although that choice and its consequences may have been onerous and unappealing to [Stanford] at the time, [PEPCO] did not force . . ." Stanford to enter the manhole. Id. Thus, "intentionality and recklessness" cannot be imputed to PEPCO. Id. In part, this is because in the District of Columbia "generally, employer-employee conflicts do not rise to the level of outrageous conduct." Id. at 211-12 (citations omitted). The situation here cannot be distinguished from Duncan and therefore "[t]he facts alleged in the complaint are insufficient to impute recklessness or outrageousness to [PEPCO] . . ." Id. at 212. Moreover, the plaintiff has not established that Harrod's requirement that he enter the manhole was "well beyond the bounds of established community standards in the employment relationship." Id. Accordingly, the plaintiff has failed to state a claim for intentional infliction of emotional distress and this claim must be dismissed.

**C.     Retaliation**

To establish a prima facie case that a plaintiff has been the victim of retaliation in violation of Title VII, the plaintiff must establish: (1) that he engaged in a protected activity, (2) that he suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and an adverse employment action.  Thomas v. Nat'l Football League Player's Ass'n., 131 F.3d 198, 202 (D.C. Cir. 1997).[11]  Here, it is undisputed that the plaintiff is a member of a protected class, i.e., the plaintiff is an African-American.  Id.  However, the plaintiff has failed to demonstrate that he suffered an adverse employment action.  All he has done is reiterate the general allegations of the complaint and concludes that he has been "aggrieved" by those actions.  Second Mot. to Amend at 4.  The plaintiff does opine that "[c]ontrary to the defendant's assertion, . . . 'no particular type of personnel action is automatically excluded from serving as the basis of a cause of action under Title VII, as long as the plaintiff is aggrieved by the action.'"  Id. (citing Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000).  And he posits that he "was 'aggrieved' by the action" of the defendant.  Id.  But, to establish that an employee sustained an adverse employment action, there must have been "a significant change in [the employee's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits."  Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998); Forkkio v. Powell, 306 F.3d 1127, 1131

---

[11]The plaintiff seeks to file a claim for retaliation under both Title VII, 42 U.S.C. §2000e, and 42 U.S.C. § 1981.  The plaintiff acknowledges that the analysis for a Title VII retaliation claim and a section 1981 retaliation claim are identical.  Thus, claims under Title VII and section 1981 which are pursued in the absence of direct evidence of discrimination, which is the case here, are analyzed under the familiar burden-shifting test articulated in the seminal case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973); Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 650 (D.C. Cir.2003) (citing Carter v. Duncan- Huggins, Ltd., 727 F.2d 1225, 1232 (D.C. Cir.1984)) (applying the McDonnell Douglas framework to section 1981 claims).

(D.C. Cir. 2002). Here, the plaintiff has not alleged or demonstrated that he has incurred consequences of the nature courts have construed as amounting to adverse employment actions. Thus, the Court is compelled to conclude that the defendant has not established a prima facie case of retaliation. Accordingly, the plaintiff's claim for retaliation must also be dismissed.

### IV. Conclusion

Based on the foregoing analysis, the Court concludes that the plaintiff has failed to state claims upon which relief can be granted with respect to the intentional infliction of emotional distress and retaliation claims asserted in his complaint and therefore these claims must be dismissed in their entirety. Also, as previously indicated,[12] because the plaintiff failed to respond to the defendant's argument that no private cause of action exists under OSHA, the Court considers the defendant's position on this claim conceded. Accordingly, the defendant's motion to dismiss the complaint is granted.

**SO ORDERED** on this 30th day of September, 2005.[13]

REGGIE B. WALTON
United States District Judge

---

[12] See footnote 10, supra.

[13] An Order consistent with this Memorandum Opinion is being issues contemporaneously herewith.