UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CALVINO STANFORD,                    )
                                     )
                    Plaintiff,       )
                                     )
         v.                          )         Civil Action No. 1:04-1461 (RBW)
                                     )
POTOMAC ELECTRIC POWER               )
COMPANY                              )
                    Defendant.       )
_____)

**MEMORANDUM OPINION**

Currently before the Court is the plaintiff's Motion for Relief from Judgment ("Pl.'s

Mot.") [D.E. # 22] pursuant to Federal Rules of Civil Procedure 60(b)(6) and 59(e).  The plaintiff

seeks relief from the judgment entered by the Court on September 30, 2005, which dismissed his

intentional infliction of emotional distress and hostile work environment claims.  For the reasons

stated below, the Court will deny the plaintiff's request for relief from the Court's judgment with

respect to his intentional infliction of emotional distress claim, grant the plaintiff relief from the

judgment with respect to his hostile work environment claim, dismiss his hostile work

environment claim, and deny the defendant's request for Rule 11 sanctions based on the filing of

the plaintiff's motion that is the subject of this opinion.

**I.  Background**

On January 20, 2006, the plaintiff, Calvino Stanford, filed a Motion for Relief from

Judgment pursuant to Rules 59(e) and 60(b)(6) of the Federal Rules of Civil Procedure.  Pl's

Mot. at 1.[1]  The motion was made in response to this Court's September 30, 2005, Memorandum

Opinion and Order dismissing the plaintiff's intentional infliction of emotional distress and

hostile work environment claims against defendant Potomac Electric Power Company

("PEPCO").  See Stanford v. Potomac Elec. Power Co., 394 F. Supp. 2d 81 (D.D.C. 2005).

      With respect to the plaintiff's claim of intentional infliction of emotional distress, the

Court found that the plaintiff failed to state a claim upon which relief could be granted because

there was no indication of intentional, outrageous conduct by PEPCO.  Id. at 91-92.  Regarding

the plaintiff's claim that he was subjected to a hostile work environment under the Occupational

Health and Safety Act ("OSHA"), 29 U.S.C. §§ 651-78 (2000), the Court concluded that the

plaintiff failed "to state a claim upon which relief may be granted because there is no private

cause of action under OSHA."  Id. at 90 n.10.  However, the Court did not consider the hostile

work environment claim under 42 U.S.C. § 1981 (2000).[2]

## II.  Standard of Review

      Rule 60(b)(6) of the Federal Rules of Civil Procedure states that "[o]n motion and upon

such terms as are just, the court may relieve a party or a party's legal representative from a final

judgment, order, or proceeding for . . . any other reason justifying relief from the operation of

---

[1] Rule 59(e) of the Federal Rules of Civil Procedure states that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."  Fed. R. Civ. P. 59(e).  The plaintiff, however, did not file his Motion for Relief from Judgment until January 20, 2006, which was more than 10 days after the Court's entry of judgment on September 30, 2005.  Pl.'s Mot.  The plaintiff is therefore barred from pursuing relief pursuant to Rule 59(e).

[2] On February 3, 2006, PEPCO filed its Opposition to Motion for Relief from Judgment ("Def.'s Opp'n"), requesting that the Court deny the plaintiff's request for relief from judgment and impose sanctions against the plaintiff.  Def.'s Opp'n at 3-6.  The plaintiff filed his Reply to Defendant's Opposition ("Pl.'s Reply"), further clarifying why he believes relief from judgment is justified and requesting that the Court deny PEPCO's request for sanctions.  Pl.'s Reply at 2-8.

judgment." Fed. R. Civ. P. 60(b)(6). Despite its expansive nature, courts have placed certain

restrictions on the applicability of Rule 60(b)(6). A determination of whether relief from

judgment should be granted does not require the Court to clarify its original ruling. See Taylor v.

Blakey, No. 03-0173, 2006 U.S. Dist. LEXIS 6859, at *11 (D.D.C. February 6, 2006). Instead,

the Court may only assess whether there exist extraordinary circumstances that merit granting

relief from the judgment. See Good Luck Nursing Home, Inc. v. Harris, 636 F.2d 572, 577 n.3

(D.C. Cir. 1980) (citations omitted). Furthermore, in order "to preserve 'the delicate balance

between the sanctity of final judgments . . . and the incessant command of the court's conscience

that justice be done in light of all the facts[,]'" the Court should only grant relief from a judgment

pursuant to Rule 60(b)(6) sparingly. Id. at 577 (quoting Bankers Mortgage Co. v. United States,

423 F.2d 73, 77 (5th Cir. 1970)).

    Extraordinary circumstances generally do not include instances where the moving party

failed to present "known facts helpful to its cause when it had the chance[.]" Good Luck Nursing

Home, Inc., 636 F.2d at 577 (citing Couch v. Travelers Ins. Co., 551 F.2d 958, 959 (5th Cir.

1977)). However, where the moving party presents previously undisclosed facts "so central to

the litigation that [they] show[] the initial judgment to have been manifestly unjust[,]" there are

sufficient extraordinary circumstances to warrant relief from a judgment pursuant to Rule

60(b)(6). Johnson v. Ashcroft, 223 F. Supp. 2d 116, 118 (D.D.C. 2002) (citing Good Luck

Nursing Home, Inc., 636 F.2d at 577)). The Court must therefore assess, without clarifying its

original determination, whether the plaintiff has demonstrated circumstances sufficiently

extraordinary to justify relief from its judgment, which dismissed his intentional infliction of

emotional distress and hostile work environment claims.

3

### III. Analysis

1.    **The Plaintiff's Claim for Relief From Judgment Pursuant to Rule 60(b)(6)**

     **A. Intentional Infliction of Emotional Distress**

The plaintiff argues that the Court's dismissal of his intentional infliction of emotional

distress claim is "unjust."  Pl.'s Mot. at 1.  According to the plaintiff, the Court's ruling was

unjust because the Court did not consider "empirical data" of deaths associated with PEPCO's

failure to properly protect and train its employees.[3]  Id. at 2.  The plaintiff asserts that since

"[PEPCO] knew of all of these deaths when it ordered [him] to go in the manhole without proper

insulated clothes or proper training[,]" its actions were clearly intentional and outrageous enough,

when combined with its knowledge of OSHA safety regulations relating to electrical power,[4] to

survive PEPCO's dismissal motion.  Id.  The plaintiff also disputes the Court's finding that he

could have refused his supervisor's order to enter the manhole.  Id. at 3.  He asserts that if he had

disobeyed his supervisor's order to enter the manhole "he would have been subjected to a

Decision Making Leave ("DML") for 18 months and then any additional infraction would have

---

[3]The plaintiff's so-called "empirical data" consists of four Washington Post articles that were written between 1991 and 2004 concerning work-related deaths of PEPCO employees due to electrocution.  Pl.'s Mot. at 6 (citing Supp. Doc. 1 ("Deaths of [PEPCO] employees between August 1, 1991 through August 17, 2004 as reported by the Washington Post Newspaper."))  The first article, dated August 1, 1991, recounts the death of Erick M. Roselle, who was electrocuted while trying to install electrical cable supports under a manhole.  Id.  The second article, dated March 21, 1992, recounts the death of a PEPCO employee who was electrocuted in an accident at a substation in Bethesda, Maryland.  Id.  The third article, dated July 4, 1996, recounts the death of Delores McRae, who was electrocuted when she came in contact with a downed power line.  Id.  The fourth and final article, dated February 22, 2004, recounts the death of Michael Ashurst, who was electrocuted after coming into contact with a charged line at PEPCO's Adelphi, Maryland plant.  Id.

[4]See 29 C.F.R. § 1910.269 (2005).

caused him to be terminated according to [PEPCO]'s policy[.]"[5]  Id.  In further support of his

allegation that the Court's original ruling was unjust, the plaintiff has provided employment

statistics, which he asserts demonstrate that if the plaintiff were to lose his job, it would be

difficult for him to find another one because he is African-American.[6]  Id.

On the other hand, PEPCO asserts that the newspaper articles proffered by the plaintiff

"have no bearing on whether performing work in a manhole on one occasion is extreme and

outrageous." Def.'s Opp'n at 4.  PEPCO further asserts that the "Declaration of Eileen

Appuglies" "accurately describes its disciplinary policies at the time, [but that] it sheds no light

on [the p]laintiff or his particular circumstances."  Id.  Finally, PEPCO contends that the

unemployment statistics proffered by the plaintiff are "plainly irrelevant."  Id.  Essentially,

PEPCO opines that even with such evidence, the plaintiff still fails to state a claim of intentional

infliction of emotional distress.  Id. at 3-4.

The Court will initially assess whether the plaintiff's new evidence, as it pertains to his

intentional infliction of emotional distress claim, warrants relief pursuant to Rule 60(b)(6) of the

Federal Rules of Civil Procedure.  First, the plaintiff's evidence would normally not be

---

[5]The plaintiff's allegation that he would risk suffering termination for failure to follow his supervisor's order stems from the Declaration of Eileen M. Appuglies.  Pl.'s Mot. at 6 (citing Supp. Doc. 2 ("Declaration of Eileen M. Appulglies" dated July 1, 2005 ¶¶ 14-15)).  According to Ms. Appuglies, a DML  is "usually the final level of formal discipline prior to discharge."  Id. ¶ 14.  Essentially, any employee subjected to a DML must maintain a "fully acceptable" performance level for eighteen months.  Id. ¶ 15.  Any failure to meet this level of performance "could result in the employee's termination."  Id.

[6]The plaintiff's allegation that if he were to lose his job, he would have difficulty finding another job stems from unemployment statistics gathered by the Bureau of Labor Statistics, United States Department of Labor.  Pl.'s Mot. at 6 (citing Supp. Doc. 3 ("U.S. Department of Labor[,] Bureau of Labor Statistics."))  These statistics indicate that as of March 10, 2005, the unemployment rate in the District of Columbia (8.2%) was well above the national average (5.5%).  Id.  They further indicate that according to 2004 annual averages, the African-American unemployment rate in the District of Columbia (13%) is significantly higher than the rates for either Hispanics (7.4%), Asians (5.7%), or Whites (3.5%).  Id.

considered when assessing whether there are any extraordinary circumstances warranting relief from the judgment, because the four newspaper articles, PEPCO's termination policies, and the unemployment statistics for the District of Columbia involve known facts that the plaintiff failed to proffer before the original determination.  See Good Luck Nursing Home, Inc., 636 F.2d at 577.  The Court must, therefore, determine whether this previously undisclosed evidence was "so central to the litigation that [it] show[s] the initial judgment to have been manifestly unjust." Johnson, 223 F. Supp. 2d at 118 (citing Good Luck Nursing Home, Inc., 636 F.2d at 577)).

Good Luck Nursing Home, Inc. concerned a health care provider who, under the Medicare program, sought reimbursement from the Department of Health, Education and Welfare ("HEW") (now the Department of Health and Human Services) for legal and accounting expenses.  Id. at 574.  The District Court initially granted summary judgment in favor of the provider.  Id.  However, upon HEW's Rule 60(b) motion, the District Court vacated its judgment for the provider upon being advised for the first time that the legal and accounting expenses had been incurred in relationship to the provider's unsuccessful defense against Medicare fraud and overpayment allegations.  Id.  The District Court predicated its ruling on the fact that its original determination was based on a "'fundamental misconception of the facts[,]'" which entitled HEW to relief from the court's judgment.  Id. at 576 (quoting Good Luck Nursing Home, Inc. v. Califano, No. 78-863, slip op. at 2 (D.D.C. June 22, 1979)).  The District of Columbia Circuit Court affirmed this aspect of the District Court's grant of relief from its judgment pursuant to Rule 60(b)(6), holding that despite its late disclosure, the information regarding how the expenses were incurred  was "so central to the litigation [because] it show[ed] the initial judgement to have been manifestly unjust . . . even though the original failure to present that

6

information was inexcusable." Good Luck Nursing Home, Inc., 636 F.2d at 577.  Otherwise, the

Court noted, "the Government would have been compelled to pay attorneys' fees to what

appeared to be the losing side in an action for fraud."  Id.

       This case is readily distinguishable from Good Luck Nursing Home, Inc. because the

previously undisclosed information proffered by the plaintiff here is not "so central to the

litigation" to amount to extraordinary circumstances pursuant to Rule 60(b)(6).  Id.  The four

newspaper articles offered by the plaintiff, which he claims objectively demonstrate the

consequences associated with working in high voltage environments without proper safety

equipment or training,  Pl.'s Mot. at 6 (citing Supp. Doc. 1), is not the quality of evidence called

for by Good Luck Nursing Home, Inc.  The articles do not directly demonstrate the risk level

associated with high voltage power lines and the plaintiff's training and the equipment he had

been provided by PEPCO, as none of the deaths referenced in the articles allegedly resulted from

inadequate training or lack of safety equipment.  The articles only demonstrate that working in

high voltage power line environments is inherently dangerous, seemingly regardless of one's

training and safety equipment.

       The plaintiff also offers evidence of PEPCO's termination policies and unemployment

statistics in the District of Columbia in an effort to demonstrate that he, contrary to the Court's

original determination, had no real choice in following his supervisor's order.  Id.  However, this

evidence does not warrant any such inference.  Although it is PEPCO's policy to issue problem

employees a DML, there is no indication that PEPCO would have given the plaintiff one if he

had refused to enter the manhole.  Moreover, even assuming PEPCO would have issued the

plaintiff a DML, there is no solid indication that he would have been fired for subsequent

infractions.  As stated in the policy, termination is merely a possibility for subsequent infractions.
Pl.'s Mot. at 6 (citing Supp. Doc. 2 ¶ 15).

Furthermore, the plaintiff's inclusion of unemployment statistics is irrelevant.  That the
residents of the District of Columbia in general and African-Americans in particular are more
likely to be unemployed does not speak to whether this particular plaintiff would have been
capable of obtaining new employment, assuming he had been fired.  The new evidence proffered
by the plaintiff, as a whole, demonstrates, at best, a speculative inference that he was subjected to
intentional infliction of emotional distress.  It therefore is not "so central to the litigation" to
satisfy the extraordinary circumstances requirement of Rule 60(b)(6).  See Good Luck Nursing
Home, Inc., 636 F.2d at 577.  Because the original determination by the Court was not based on a
"fundamental misconception of the facts[,]" relief from its judgment is not warranted with
respect to the plaintiff's claim of intentional infliction of emotional distress.[7]  See id. at 576
(quoting Good Luck Nursing Home, No. 78-863, slip op. at 2).

### B.  Hostile Work Environment

With respect to the plaintiff's hostile work environment claim, the Court found that it
"fail[ed] to state a claim upon which relief my be granted because there [was] no private cause of
action under OSHA."  Stanford, 394 F. Supp. 2d at 90 n.10.  The Court, therefore, dismissed the
plaintiff's hostile work environment claim.  See id.  The plaintiff challenges this dismissal,
arguing that the Court failed to consider this claim under 42 U.S.C. § 1981.  Pl.'s Mot. at 4-5.

---

[7]The plaintiff also requests that the Court reconsider its reliance on Duncan v. Children's Nat'l Med. Ctr.,
702 A.2d 207 (D.C. 1997).  See Stanford, 394 F. Supp. 2d at 91-92.  The plaintiff asserts that Rogers v. Loews
L'Enfant Plaza Hotel, 526 F. Supp. 523 (D.D.C. 1981), represents the proper precedent for reviewing his intentional
infliction of emotional distress claim.  Pl.'s Mot. at 3-4.  However, for the reasons stated in its earlier memorandum
opinion and for the reasons stated in PEPCO's Opposition to Motion for Relief from Judgment, the Court will not
reconsider its reliance on Duncan.  See Stanford, 394 F. Supp. 2d at 91-92; Def.'s Opp'n at 3-4.

The plaintiff asserts that once the Court assumed jurisdiction pursuant to 42 U.S.C. § 1981 to

hear his retaliation claim, it had jurisdiction under 42 U.S.C. § 1981 to hear his hostile work

environment claim.[8]  Id.  In response, PEPCO asserts that the plaintiff's invocation of the Court's

jurisdiction pursuant to 42 U.S.C. § 1981 without specific mention of the hostile work

environment claim is insufficient grounds for prosecuting that claim pursuant to 42 U.S.C. §

1981.  Def.'s Opp'n at 4-5.

Rule 8(a)(2) requires that a complaint include "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Moreover, Rule 8(f)

instructs courts to construe "all pleadings . . . to do substantive justice."  Fed. R. Civ. P. 8(f).

This requires the Court to consider all allegations that are specified to the extent necessary to

place the opposing party on notice.  See Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002).  The

Court did consider and dismiss the plaintiff's claim for hostile work environment pursuant to

OSHA regulations, which do not provide for a private right of action.  See Stanford, 394 F. Supp.

2d at 90 n.10.  However, the Court did not consider the plaintiff's claim, as it now understands

was being requested, under 42 U.S.C. § 1981.  Third Amended Complaint ("Third Am. Compl.")

¶¶ 18-19.

Although it was not apparent to the Court previously, the Court agrees with the plaintiff

that he provided sufficient notice to the defendant that he was also raising his hostile work

environment claim under 42 U.S.C. § 1981.  See Swierkiewicz, 534 U.S. at 514.  This

conclusion is called for because within his Third Amended Complaint, where he invokes, for the

---

[8]The plaintiff asserts that the Court had jurisdiction under 42 U.S.C. § 1981 because within his Third
Amended Complaint, where he requested the Court assume jurisdiction under 42 U.S.C. § 1981, he had again
alleged his hostile work environment claim under this statutory provision.  Pl.'s Third Am. Compl. ¶¶ 18-19.

first time, 42 U.S.C. § 1981 as a jurisdictional basis for his claims, the plaintiff reasserts paragraphs 1-17 of his earlier complaints.   Third Am. Compl. ¶¶ 18-19.   Paragraph 14 of two earlier complaints references his hostile work environment claim, wherein the plaintiff asserts that the defendant created a hostile work environment by ordering him to enter a manhole without proper safety equipment and without adequate training.   Complaint ¶ 14; Amended Verified Complaint ¶ 14.   Thus, by incorporating paragraph 14 into his Third Amended Complaint, the plaintiff clearly asserted his hostile work environment claim under 42 U.S.C. § 1981.   Accordingly, the Court's failure to consider the claim under § 1981 amounts to extraordinary circumstances, and the plaintiff is therefore entitled to relief from the Court's judgment with respect to his hostile work environment claim.

   2.     **The Defendant's Rule 12(b)(6) Motion to Dismiss**

   The Court will now assess whether the plaintiff has adequately alleged a hostile work environment claim pursuant to 42 U.S.C. § 1981, sufficient to withstand the defendant's dismissal motion.   To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint need only provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."   Conley v. Gibson, 355 U.S. 41, 47 (1957) (citing Fed. R. Civ. P. 8(a)).   And, when reviewing a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint.   Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).   A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which he is entitled to relief.   Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).   Thus,

"a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

"Section 1981 prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 n.1 (D.C. Cir. 2000) (quoting 42 U.S.C. § 1981(b)). PEPCO first asserts that the plaintiff's hostile work environment claim under 42 U.S.C. § 1981 cannot be sustained because he has not alleged a prima facie association between racial discrimination and his hostile work environment claim. Def.'s Opp'n 5-6. The plaintiff need not demonstrate a prima facie case of having been subjected to a hostile work environment in order to survive a motion to dismiss. See Sparrow, 216 F.3d at 1114. Rather, only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. Id. (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the plaintiff need only state a causal connection between his race and his hostile work environment claim in order to survive a motion to dismiss. See Sparrow, 216 F.3d at 1115 (citing Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6)")).

Here, the plaintiff has failed to state any causal connection between the fact that he is African-American and his hostile work environment claim. The plaintiff's Third Amended Complaint states only that requiring him to enter a manhole without proper training and protective equipment created a hostile working environment. Third Am. Compl. ¶ 18 (incorporating hostile work environment claim from earlier complaints). There is nothing in the

11

complaint stating that PEPCO's conduct was predicated on the plaintiff's race.  Id.  And even if

the plaintiff had made such an assertion, the claim would still be subject to dismissal because the

events, as stated in the Third Amended Complaint, do not amount to a hostile work environment

claim.  Id.  Indeed, a hostile work environment claim requires discriminatory conduct

"sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment."  Harris v. Forklift Sys., Inc., 510 U.S. 21, 21 (1993) (citations

omitted).  Furthermore, "[e]xcept in extreme circumstances, courts have refused to hold that one

incident is so severe to constitute a hostile work environment."  Stewart v. Evans, No. 00 Civ.

1241, at 6 (D.D.C. Feb. 6, 2001),[9] aff'd, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citing Tatum v.

Hyatt Corp., 918 F. Supp. 5, 7 (D.D.C. 1994)).

        For example, in Stewart, the court held that one instance of verbal abuse over the

telephone directed towards the plaintiff did not amount to a hostile work environment.  See

Stewart, 275 F.3d at 1133-34.  Even more strikingly, in Tatum, a single occurrence of sexual

harassment, whereby the plaintiff's co-worker "unexpectedly wrapped his arms around her neck

and body, rubb[ed] against her as if to stimulate [sic] a sex act, made comments about her

physical attractiveness, and otherwise harassed her sexually[,]" did not amount to a hostile work

environment because "absent the most stringent circumstances, courts have refused to hold that

one incident in itself was so severe as to create a hostile work environment."  Tatum, 918 F.

Supp. at 5, 7 (citations omitted).

        Like the hostile work environment claim in Stewart, the hostile work environment claim

_____

        [9]The District Court's Memorandum Opinion dated February 6, 2001 is unpublished and unavailable on any
electronic database.  However, it may be found attached as an appendix to Stewart v. Evans, 275 F.3d 1126, 1131-36
(D.C. Cir. 2002).

here is weaker than was the claim in Tatum.  Although the plaintiff has alleged that he was previously passed over for a job promotion, he has not provided any evidence to support this allegation.  Pl.'s Reply at 5.  Thus, the only incident asserted by the plaintiff that allegedly created a hostile environment was the requirement that he enter a manhole without proper training or protective equipment.  Third Am. Compl. ¶ 18.  If one instance of sexual harassment, including inappropriate physical touching, is not severe enough to merit a hostile work environment claim, then one instance of a non-physical, non-coercive instruction to enter a manhole without proper training or protective equipment is not severe enough to merit a hostile work environment claim either.  In any event, the hostile work environment allegation in this case more closely resembles the hostile work environment allegation in Stewart, as both involve non-physical conduct.  Accordingly, the plaintiff has failed to sufficiently allege a hostile work environment claim under 42 U.S.C. § 1981.

### 3.    PEPCO's Rule 11 Motion for Sanctions

Finally, PEPCO alleges that the plaintiff's Motion for Relief from Judgment and the legal support provided for the motion amount to a violation of Rule 11 of the Federal Rules of Civil Procedure.  Def.'s Opp'n at 3 n.3.  PEPCO therefore requests that the Court "require [the p]laintiff to show cause as to why [PEPCO] should not be awarded the attorney's fees incurred by it in responding to [the p]laintiff's Motion for Relief."  Id.  In response, the plaintiff asserts that his positions are supported by existing law and the Court should accordingly deny PEPCO's request for Rule 11 sanctions.  Pl.'s Reply at 4.

Rule 11(b)(1)(2) of the Federal Rules of Civil Procedure authorizes the imposition of sanctions for motions filed "for any improper purpose" or for "legal contentions . . .

13

[un]warranted by existing law[.]" Fed. R. Civ. P. 11(b)(1)(2).  District Courts have wide

discretion, subject to some restrictions, in determining whether Rule 11 sanctions are

appropriate.  See Westmoreland v. CBS, Inc., 770 F.2d 1168, 1174 (D.C. Cir. 1985).  In order for

the Court to require a response to a request for Rule 11 sanctions, PEPCO is required to satisfy

both the procedural and substantive requirements of the Rule.  See Taylor, No. 03-0173, 2006

U.S. Dist. LEXIS 6859, at *16-20.

   With respect to the procedural requirements, the moving party must describe the specific

conduct at issue and must move for sanctions separately.  Id. at *16.  In Taylor, the court

determined that sanctions were inappropriate, in part because the moving party had made its

request for sanctions within its motion for summary judgment.  See id. at 20; see also Augustus

v. Harvey, No. 02-2545, 2005 U.S. Dist. LEXIS 37767, at *14 (D.D.C. September 29, 2005)

(finding that sanctions pursuant to Rule 11 were inappropriate because the moving party had

included its request for sanctions within its motion to strike submissions).  Here, similarly,

PEPCO has failed to independently request sanctions pursuant to Rule 11.  Rather, PEPCO has

included its request for Rule 11 sanctions within its Opposition to Motion for Relief from

Judgment.  Def.'s Opp'n at 3 n.3.  Because of this transgression, it is unnecessary for the Court to

assess whether PEPCO sufficiently described the conduct that allegedly provides the basis for

sanctions.

   PEPCO's noncompliance with the procedural requirements of Rule 11, however, does not

end the Court's analysis, as the Court may impose sanctions sua sponte, provided that the Court

itself complies with certain procedural and substantive requirements.  Procedurally, a court may

grant sanctions sua sponte only "after notice and a reasonable opportunity to respond" have been

provided.  <u>Taylor</u>, No. 03-0173, 2006 U.S. Dist. LEXIS 6859, at \*21 (quoting Fed. R. Civ. P.

11(c)) (holding that such notice is provided if the court affords the non-moving party the

opportunity to show cause why Rule 11 sanctions should not be imposed).  The Court has not to

date satisfied these requirements, and the Court will not require the plaintiff to submit a response

to the defendant's request for sanctions, as it discerns no substantive basis for imposing

sanctions.  In other words, the Court rejects the defendant's position that the plaintiff's legal

contentions are unwarranted by existing law.  <u>See</u> Fed. R. Civ. P. 11(b)(2).  To the contrary, the

plaintiff's legal contentions with respect to intentional infliction of emotional distress and hostile

work environment are surely warranted by existing law.[10]  The fact that the plaintiff has failed to

succeed on these claims does not <u>ipso</u> <u>facto</u> amount to a violation of Rule 11.  <u>See</u> <u>Taylor</u>, No.

03-0173, 2006 U.S. Dist. LEXIS 6859, at \*17.  Furthermore, the Court has no reason to conclude

that the plaintiff's Motion for Relief from Judgment was made with any improper purpose.  <u>See</u>

Fed. R. Civ. P. 11(b)(1).  As the court in <u>Taylor</u> noted, "Rule 11 sanctions are an extreme

punishment."  <u>See</u> <u>Taylor</u>, No. 03-0173, 2006 U.S. Dist. LEXIS 6859 at \*23.  With this in mind,

sanctions in this case would be too extreme, especially considering that the Court partially

granted the plaintiff's Motion for Relief from Judgment.  Accordingly, PEPCO's request for

sanctions pursuant to Rule 11 is denied.

---

[10]With respect to his intentional infliction of emotional distress claim, the plaintiff relies on <u>Rogers v. Loews L'Enfant Plaza Hotel</u>, 526 F. Supp. 523 (D.D.C. 1981), which was based on legal authority that remains the law in the District of Columbia.  <u>See</u> <u>Smith v. District of Columbia</u>, 882 A.2d 778, 794 (D.C. 2005).  Furthermore, the plaintiff relies on 42 U.S.C. § 1981 as a jurisdictional basis for this Court to entertain his hostile work environment claim.  This is clearly an appropriate avenue for asserting this Court's subject matter jurisdiction.  <u>See</u> <u>Sparrow</u>, 216 F.3d at 1113 n.1 (citing <u>Carney v. American Univ.</u>, 151 F.3d 1090, 1092-93 (D.C. Cir. 1998).

**IV. Conclusion**

Based on the foregoing analysis, the Court concludes that the plaintiff has failed to demonstrate extraordinary circumstances warranting relief from judgment with respect to his claim of intentional infliction of emotional distress.  Accordingly, with respect to this claim, the plaintiff's Motion for Relief from Judgment must be denied.  On the other hand, the plaintiff has demonstrated extraordinary circumstances warranting relief from judgment with respect to his claim of hostile work environment, and his Motion for Relief from Judgment must therefore be granted.  However, the plaintiff had failed to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1981 and therefore this claim must be dismissed.  Finally, PEPCO's request for sanctions pursuant to Rule 11 must be denied.

**SO ORDERED** on this ___ day of June, 2006.[11]

REGGIE B. WALTON
United States District Judge

[11]An Order consistent with this Memorandum Opinion is being issued contemporaneously herewith.